## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD A. BUDA,                    :   CIVIL NO. **1:03-CV-0878**
                                   :
                Petitioner         :   (Judge Conner)
                                   :
            v.                     :   (Magistrate Judge Smyser)
                                   :
WILLIAM S. STICKMAN, III,          :
DISTRICT ATTORNEY OF WAYNE         :
COUNTY and THE ATTORNEY            :
GENERAL OF PENNSYLVANIA,           :
                                   :
                Respondents        :

## REPORT AND RECOMMENDATION

On January 31, 2003, the petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. The case was subsequently transferred to this court.

On October 8, 2003, the respondents filed a response to the petition. By an Order dated November 5, 2003, counsel was appointed to represent the petitioner. The Order of November 5, 2003, further required counsel for the petitioner to file a brief in support of the petition, for the respondent to file a brief in opposition to the petition, and for the petitioner to file a reply brief.

After requesting and receiving extensions of time, the petitioner (through counsel) filed his brief in support of the petition on December 9, 2003 and the respondents filed their brief in opposition on January 7, 2004.  The petitioner filed a reply brief on January 20, 2004.

By an Order dated February 19, 2004, we ordered the respondents to file with this court additional documents from the state court record.  On March 1, 2004, the respondents filed those documents.

In a Report and Recommendation dated March 16, 2004 (Doc. 30), it was recommended that the habeas corpus petition be dismissed without an evidentiary hearing, by an application of the provisions of 28 U.S.C. § 2254(e)(1) (presumption of correctness), 28 U.S.C. § 2254 (e)(2) (limited bases for federal evidentiary hearing) and a finding that the petition had failed to develop in state courts the factual basis for his federal claims.  The Report and Recommendation was adopted by the Court by Order of May 14, 2006 (Doc. 36).

The United States Court of Appeals for the Third Circuit reversed and directed that an evidentiary hearing be held, by its Judgment of September 16, 2005.

2

An evidentiary hearing was held on May 24, 2006.  The
transcript of this hearing is docketed at Doc. 56.  Post hearing
briefs were filed.  (Docs.  58, 59 and 60).

The prosecution and conviction of the petitioner in the
Court of Common Pleas of Wayne County grows out of the murder of
Charles Gregg in his Wayne County home on August 11, 1996.  On
April 8, 1997, the petitioner was arrested and charged with
criminal homicide, robbery, burglary, theft by unlawful taking or
disposition, and criminal conspiracy. *Commonwealth v. Buda*, No.
2878 EDA 2001, slip op. at 2 (Pa.Super.Ct. Aug. 26, 2002).  On
January 28, 1998, the petitioner pleaded guilty to first degree
murder. *Id.*  Judge Robert J. Conway of the Court of Common Pleas
of Wayne County, Pennsylvania, sentenced the plaintiff to a
mandatory sentence of life imprisonment. *Id.*  The remaining
charges against the petitioner were *nolle prosequied. Id.*

The petitioner did not file a direct appeal.  However, on
November 20, 1998, the petitioner filed a *pro se* petition for
relief under Pennsylvania's Post Conviction Relief Act (PCRA).
*Id.*  On November 22, 1999, the PCRA court appointed counsel to
represent the petitioner. *Id.*  On January 15, 2001, petitioner's
counsel filed a "no merit" letter pursuant to *Commonwealth v.
Finley*, 550 A.2d 213 (Pa.Super.Ct. 1988), and a motion to
withdraw as counsel. *Id.*  On February 9, 2001, the petitioner
filed a *pro se* response to his counsel's "no merit" letter. *Id.*

On February 20, 2001, the PCRA court filed an opinion, order and notice of intention to dismiss the petition. *Id.* at 2-3.   The PCRA court granted the petitioner's counsel's motion to withdraw.   *Id.* at 4.   The PCRA court addressed the petitioner's claims as follows:

> The Court's independent review indicates the P.C.R.A. counsel has correctly summarized the issues raised by the Defendant as follows:
> (I)   Ineffectiveness of Trial Counsel in that Counsel failed to pursue a trial defense which possessed a potential for success greater than that utilized by counsel.
> (II)  Ineffectiveness of Trial Counsel in that Counsel goaded defendant of his right to trial by jury, in that Counsel failed to advise Defendant of the mitigating factors in Defendant's behalf regarding a sentence of death.
> (III) Ineffectiveness of Trial Counsel in that Counsel failed to object to the degree of guilt, in that Trial Counsel lacked a factual basis in accepting a guilty plea of first degree murder.
> (IV)  Reserving the right to amend P.C.R.A. upon obtaining and reviewing the pretrial discovery materials provided to Counsel in this case and that of the Court Records.
>
> Regarding the first issue, the Defendant entered a guilty plea.  Therefore, defense counsel could not have failed to pursue a trial defense which possessed a greater potential for success than that utilized by counsel.  The issue is spurious.
>
> Regarding the second issue, 42 Pa. C.S.A. § 9543(a)(2)(iii) states:
> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

Specifically, the Defendant alleges defense counsel was ineffective by failing to advise Defendant of the mitigating factors in Defendant's behalf regarding sentence of death. As previously noted, the Defendant received a life sentence.  Therefore, the grounds alleged in this issue is absolutely irrelevant.

Regarding the third issue, the Superior Court has stated:

> It is established that any issue relating to the sufficiency of the evidence is waived by entry of guilty plea and is not subject to attack in post-conviction proceeding.  (after entry of guilty plea in a post-conviction setting, only cognizable issues relate to validity of the plea and legality of the sentence).  Thus, there is no issue of genuine fact that appellant is not entitled to PCRA relief on the basis of this claim.

<u>Commonwealth v. Williams</u>, 442 Pa. Super. 590, 600, 660 A.2d 614 (1995) (Citations omitted). Therefore, this issue is also meritless.

Moreover, an examination of the record reveals there was sufficient evidence to convict the Defendant and the Defendant agreed this evidence was substantially correct.  That is:

> TROOPER TODD: Your Honor, this crime took place on August 11th, 1996.  The Defendant and three co-defendants went to the home of Charles Gregg.  In a signed statement given on April 8th, 1997, the Defendant admitted to breaking into the home of Charles Gregg with two co-defendants and helping a co-defendant, Michael Wilson, subdue Mr. Gregg when he arrived home.  The Defendant then helped Wilson duct tape Gregg's hands, feet and face. Defendant helped his co-defendants

5

carry numerous rifles, shotguns and
pistols from Gregg's house.  After all
the guns had been removed from the
residence, Defendant admitted that he
and two other co-defendants each fired
a shot from a revolver into Charles
Gregg as he was lying on the floor.

THE COURT:   Mr. Buda, you've heard the
summary of evidence against you.  Is
that substantially correct?

MR. BUDA:   Yes it is, Your Honor.

(N.T. 3,4)

Finally, the Defendant makes numerous other
allegations which he states should have been
raised by defense counsel.  Thus, defense counsel
was ineffective.  These allegations are not
easily understandable.  They include the
Defendant was drunk at the time of the murder;
the Defendant was under the influence of drugs at
the time of the murder and at the time of the
guilty plea, and the Defendant shot the victim
only because he was threatened by a co-defendant.

These allegations are clearly meritless.
They contradict the Defendant's prior written
statements.  They also contradict the Defendant's
testimony at the hearing in which he stated:
a.    he was satisfied with the representation of
      counsel [N.T. 5];
b.    the anti-depressant did not inhibit his
      ability to understand the proceeding [N.T.
      5];
c.    he understood that the Commonwealth had to
      prove that he, acting either as an
      accomplice of a coconspirator or on his own,
      killed Charles Gregg [N.T. 7];
d.    he understood the Commonwealth had to prove
      he had the specific intent to kill Charles
      Gregg [N.T. 7];

6

> e.   he was provided with in excess of twelve
>       hundred pages of discovery [N.T. 7];
> f.   it was his decision to enter a plea of
>       guilty [N.T. 9]; and
> g.   he was satisfied with his attorney's
>       representation [N.T. 9].
>
> In addition, defense counsel filed an
> Omnibus Pre-Trial Motion.  This Motion sought:
> I.    Suppression of the statements made by the Defendant
>        to the Pennsylvania State Police.
> II.   Habeas Corpus-Motion to Dismiss the
>        charge of First Degree Murder.
> III.  Motion for a Change of Venue.
> IV.   Motion to return Defendant to Wayne
>        County.
> V.    Motion for Severance pursuant to
>        Pa.R.Pro.No. 1128.
> VI.   Motion for Additional Discovery.
> VII.  Motion for Expert Witness.
>
> On November 25, 1997, this Court issued an
> extensive Opinion regarding these issues.  In
> this Opinion, the Court found a *prima facie* case
> was established pertaining to the charge of First
> Degree Murder.
>
> Therefore, after review of the record, this
> Court is satisfied there are no genuine issues
> concerning any material fact and the Defendant is
> not entitled to post-conviction collateral
> relief.  No purpose would be served by any
> further proceedings.

*Commonwealth v. Buda,* No. 156-1997 Criminal, slip op. at

unnumbered pages 3-5 (C.C.P. Wayne Feb. 20, 2001).  On March 3,

2001, the petitioner filed a *pro se* response objecting to the

PCRA court's notice of intention to dismiss. *Commonwealth v.*

*Buda*, No. 2878 EDA 2001, slip op. at 3 (Pa.Super.Ct. Aug. 26,

2002).

On August 28, 2001, the PCRA court entered a final order denying without a hearing the petitioner's PCRA petition. *Commonwealth v. Buda,* No. 156-1997 Criminal, slip op. (C.C.P. Wayne Aug. 28, 2001).  In this order the PCRA court stated:

> The Court has reviewed the numerous documents filed by the Defendant since he filed his Petition for Post-Conviction Collateral Relief.  This review encompassed the Defendant's Response to the P.C.R.A. Court's Notice of Intention to Dismiss.  The common theme is that the Defendant alleges facts differing from his statements of record.  As the Court noted in its Notice of Intention to Dismiss, these allegations are contradicted by the record from the guilty plea hearing.  This Defendant will not be permitted to contradict his prior statements from a guilty plea hearing, <u>Commonwealth v. Harris</u>, 381 Pa.Super. 206, 217 (1989)(citations omitted).
>
> Therefore, the Court is once again satisfied that there are no genuine issues concerning any material fact and that the Defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings.

*Id.* at 1-2.

The petitioner appealed the denial of his PCRA petition to the Pennsylvania Superior Court. *Commonwealth v. Buda*, No. 2878 EDA 2001, slip op. at 3 (Pa.Super.Ct. Aug. 26, 2002).  The petitioner raised only the following claim in his brief to the Superior Court:

> Did the lower court err in failing to find appellant was denied effective assistance of PCRA

8

counsel, in that PCRA counsel failed to advance
appellant's pro-se claim that trial counsel was
constitutionally ineffective assistance in
failing to present a trial defense that
appellant's involvement in the crime alleged
lacked imputed-malice for murder?

Doc. 15, Exhibit 2 at 3.

By an Order dated August 26, 2002, the Pennsylvania
Superior Court denied the petitioner's appeal. *Commonwealth v.
Buda*, No. 2878 EDA 2001 (Pa.Super.Ct. Aug. 26, 2002).  The
Superior Court addressed the petitioner's claim as follows:

Pennsylvania law makes clear that "[t]o
establish a claim of ineffective assistance of
counsel, appellant bears the burden of proving:
(1) that the underlying claim is of arguable
merit; (2) that counsel's action or inaction
was not grounded on any reasonable basis
designed to effectuate appellant's interest;
and (3) that the act or omission prejudiced
Appellant in such a way that the outcome of the
proceeding would have been different." 
*Commonwealth v. Blystone*, 555 Pa. 565, 579, 725
A.2d 1197, 1204 (1999) (citing *Commonwealth v.
Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)).
Trial counsel is presumed effective and the
burden is on the appellant to prove otherwise.
*Commonwealth v. Breisch*, 719 A.2d 352, 354
(Pa.Super. 1998) (citing *Commonwealth v.
Williams*, 524 Pa. 218, 230, 570 A.2d 75, 81
(1990)).  The PCRA does not impose a more
onerous burden on an appellant alleging
ineffective assistance of counsel than that
required on direct appeal.  *Commonwealth v.
Kimball*, 555 Pa. 299, 311, 724 A.2d 326, 332
(1999).

9

Moreover, a claim of counsel's
ineffectiveness made in connection with the
entry of a guilty plea will provide a basis for
PCRA relief only if the appellant can prove
that the ineffectiveness caused an involuntary
or unknowing plea. *Commonwealth v. Mendoza*,
7330 A.2d 503 (Pa.Super. 1999). Because
Appellant pleaded guilty, his ineffectiveness
of counsel claim, raised in the context of an
attack on the validity of his guilty plea,
falls under 42 Pa.C.S.A. § 9543(a)(2)(iii).
*[Footnote omitted.]* *See id*. at 505;
*Commonwealth v. Young*, 695 A.2d 414, 416
(Pa.Super. 1998). Moreover, in *Commonwealth v.
Hallock*, 722 A.2d 180 (Pa.Super. 1998), this
Court iterated the appropriate analysis with
respect to an ineffectiveness of counsel claim
brought in connection with the entry of a
guilty plea:

> Claims of counsel's ineffectiveness
> in connection with a guilty plea will
> provide a basis for relief only if
> the ineffectiveness caused an
> involuntary of unknowing plea. This
> is similar to the "manifest
> injustice" standard applicable to all
> post-sentence attempts to withdraw a
> guilty plea. The law does not
> require that Appellant be pleased
> with the outcome of his decision to
> enter a plea of guilty: All that is
> required is that [the petitioner's]
> decision to plead guilty be
> knowingly, voluntarily, and
> intelligently made.

*Id*. at 182 (quoting *Commonwealth v. Yager*, 685
A.2d 1000, 1004 (Pa.Super. 1996) *(en banc),
appeal denied*, 549 Pa. 716, 701 A.2d 577
(1997)). However, to be eligible for relief
under the PCRA under Section 9543(a)(2)(iii),
Appellant must plead and prove by a
preponderance of the evidence not only that he
was unlawfully induced to plead guilty **but also**

that he is innocent.  *Commonwealth v. Laszczynski*, 715 A.2d 1185 (Pa.Super. 1998), *appeal denied*, 557 Pa. 638, 732 A.2d 1209 (1998); 42 Pa.C.S.A. § 9543(a)(2)(iii). Appellant's claim is not cognizable under that section of the statute if he fails to meet either prong.  *Id.*  Furthermore, this Court has "uniformly held that such [guilty plea] claims will not be entertained, as an appellant will not be permitted to contradict his own prior sworn statements at a guilty plea hearing." *Commonwealth v. Harris*, 553 A.2d 428, 434 (Pa.Super. 1989).  *See Commonwealth v. Carillo*, 465 A.2d 1256, 1261 (Pa.Super. 1983).

Finally, in ruling on a petition to withdraw filed by PCRA counsel, this Court must conduct an independent review of the record as a follow-up to PCRA counsel's "no-merit" letter.  *Commonwealth v. Mosteller,* 633 A.2d 615, 617 (Pa.Super. 1998).  *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Finley, supra.*

The independent review necessary to secure a withdrawal request by counsel requires proof that:

1.  PCRA counsel, in a "no-merit" letter, has detailed the nature and the extent of his review;
2.  PCRA counsel, in the "no-merit" letter, lists each issue the petitioner wishes to have reviewed;
3.  PCRA counsel must explain, in the "no-merit" letter, why petitioner's issues are meritless;
4.  The PCRA court must conduct its own independent review of the record; and
5.  The PCRA court must agree with counsel that the petitioner is meritless.

11

*Mosteller, supra; Finley, supra*.  "In addition,
this assessment by the PCRA court is, of
course, subject to appellate scrutiny to assure
that these constraints are followed."
*Mosteller, supra*.  Substantial compliance with
these requirements will satisfy the criteria.
*Commonwealth v. Dukeman*, 605 A.2d 418, 420
(Pa.Super. 1992) (stating, although attorney
failed to explain why all PCRA petitioner's
issues raised were meritless, petition for
counsel to withdraw granted).

In the instant case, Appellant entered a
guilty plea, and was sentenced to life in
prison by the Court of Common Pleas.
Therefore, Appellant's claim of counsel's
ineffectiveness will provide a basis for PCRA
relief only if Appellant proves that the guilty
plea was involuntary or unknowing, and that he
is innocent.  *See Laszczynski, supra*.  However,
even though Appellant does allege his
innocence, *[footnote omitted]*, he stated during
the guilty plea colloquy that he was satisfied
with counsel's representation at trial.  (N.T.
Guilty Plea, January 28, 1998, at 62).  Thus,
our review of the record reveals that Appellant
voluntarily and knowingly entered the guilty
plea.  *Id.*

Next, we examine PCRA counsel's "no merit"
letter to ensure that it met the necessary
requirements to secure a withdrawal.  *See
Mosteller, supra*.  First, counsel detailed the
nature and the extent of her review in her "no
merit" letter.  (R.R. at 6a).  Counsel also
listed each issue that Appellant set forth for
review in his PCRA petition.  *Id*.  Thirdly,
counsel explained in her "no merit" letter why
Appellant's issues are meritless.  *Id*.  Next,
the PCRA court conducted an independent review
of the following issues set forth in
Appellant's PCRA petition:
. . .

12

>           The Court of Common Pleas addressed the
>      issues as follows:
>
>      . . . [quoting trial court opinion]
>
>           After conducting our own independent
>      review of the record, we conclude that the PCRA
>      court's reasoning was sound and adopt it as our
>      own. *See Mosteller, supra.*  Accordingly, we
>      affirm the PCRA court's order denying
>      Appellant's petition for post-conviction
>      relief.

*Id.* at 5-13.

By an Order dated December 18, 2002, the Pennsylvania

Supreme Court denied the petitioner's Petition for Allowance of

Appeal. *Commonwealth v. Buda*, No. 749 MAL 2002 (Pa. Dec. 18,

2002).

The petitioner presented the following three claims in

this court in his original memorandum in support of his habeas

petition: 1) petitioner was denied his constitutional right to

due process of law, in that the state court failed to find

petitioner was denied effective assistance of post-conviction

relief counsel, in that post-conviction relief counsel failed

to advance petitioner's claim that he was denied his

constitutional right to effective assistance of trial counsel,

in that trial counsel induced petitioner's guilty plea to

first-degree murder, when petitioner's involvement in the crime charged lacked imputed-malice for felony murder; 2) petitioner was denied his constitutional right to due process of law, in that the state court failed to consider facts and evidence beyond his guilty plea colloquy answers in determining his claim of innocence, and trial counsel's ineffectiveness; and 3) petitioner was denied his constitutional right to due process of law, in that the state court failed to conduct an evidentiary hearing.

Recognizing that 28 U.S.C. 2254(i) precludes any claim for ineffective assistance of post-conviction counsel, the petitioner's counsel states that he does not intend to pursue the claim of ineffective assistance of post-conviction counsel. Petitioner's counsel further states that the three claims made by the plaintiff distill down to one claim - that the petitioner received bad advice from trial counsel about possible defenses, the likelihood of the death penalty and the degree of murder that was appropriate under the facts and law and that this bad advice caused him to plead guilty to murder in the first degree rather than go to trial.

The petitioner's claim is a Sixth Amendment claim of ineffective assistance of counsel. A claim of ineffective assistance of counsel requires a two part analysis. First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). Counsel's performance should be viewed from counsel's perspective at the time without the distorting effects of hindsight. *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001). Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. *Strickland, supra,* 466 U.S. at 687. To establish prejudice the petitioner must show that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* at 694. "In plea bargain cases, a petitioner satisfies the prejudice requirement by demonstrating a reasonable probability that 'but for counsel's erroneous advice, he would not have pleaded guilty and gone to trial.'" *Scarbough v. Johnson,* 300 F.3d 302, 306 (3d Cir. 2002)(quoting *Meyers v. Gillis*, 142 F.3d 664, 668 (3d Cir. 1998)).

15

The witnesses who testified at the May 24, 2006 hearing in this court, both called by the petitioner, were Jeffrey Wander, Esquire and Edward R. Buda, the petitioner.  Mr. Wander stated that he had experience with death penalty cases in Wayne County and with Wayne County juries.  He was appointed by the Wayne County Court of Common Pleas to represent Edward Buda in connection with the Gregg burglary and homicide.  It was a part of the background of these cases that Buda had been involved with co-defendants Mandeville, Quarles and Wilson in a number of home burglaries in Wayne County.  Mr. Wander was representing Buda as well on preceding burglary charges, referred to as the Watson case and as the Torrick case.  At the guilty plea of Buda's co-defendant Wilson in the Gregg murder case, Wilson stated to the court that he had control over Mandeville, Buda and Quarles and manipulated these others to do as Wilson intended.  Wilson had stated to the court that he, Wilson, had shot first into the duct tape bound body of the victim, Mr. Gregg.  He stated that Mandeville shot second, and did so because Wilson threatened to shoot Mandeville if Mandeville did not shoot a bullet into the body of Gregg.  He stated that Buda shot third, and that it was the same for Buda. Wander testified that he made sure that he had Wilson under

16

subpoena for the upcoming Buda trial.  However, Wander felt

that Wilson was not a reliable witness.  He felt that it would

be foolish as Buda's counsel to base his case on what Wilson

might say.  Wander felt that his principal purpose as Buda's

attorney would be to make sure that Buda would not be sentenced

to death, and that in the context of this priority it would be

a mistake to base his case on the intent to prove through

Wilson that Buda shot Gregg as the result of duress.

    Wander stated in his testimony that his

conceptualization of the case was based in large part upon his

understanding of the characteristics of judgment and decision

making of Wayne County juries.  He knew based upon his

experience and based upon the nature and circumstances of the

Gregg killing that it would be very difficult to avoid a death

penalty verdict against Buda, who he was committed to

represent.  Wayne County is small, rural and conservative.

Buda was from New Jersey.  Given that there would be strong

evidence that Buda and his co-conspirators were burglarizing

Wayne County homes, that the Gregg killing arose from a foiled

deception scheme to remove Gregg from his home to facilitate

the burglary of his home, that Gregg was bound with duct tape

and shot to prevent him from being a witness against the

burglars, that he was shot three times by three separate
burglars, and that the foregoing facts would need to be
essentially established by Buda in order for him to present the
uncertain-of-outcome duress defense, Wander felt that the
duress defense was not the better strategic selection taking
into account that Buda would be subject to a life sentence in
any case.  In arriving at this decision, Wander did consider
also that there could be evidence that Gregg was already dead
when the third shot was fired in conjunction with Wilson's
assertion that Buda was the third shooter.  Buda had told
Wander that he (Buda) was the second shooter.  Accordingly,
Wander could not have pursued a duress defense involving a
theory that Buda was the third shooter by presenting the
testimony of Buda.

Wander had tried to obtain a pretrial determination
from the trial court that Buda was not the cause of death, but
the pretrial motion had been denied, and accordingly were the
petitioner to have pursued that position it would have been
necessary to take the risk of a death penalty verdict that
would inevitably be involved with a jury trial.

Wander had considered too that Buda had used drugs before the killing.  He did not think that a defense of diminished capacity based on that fact, or based upon the fact that the motive for the burglaries was to acquire valuable items to be sold so as to have money to buy drugs, would have impressed the jury or led away from a death penalty verdict.

Wander acknowledged that he had understood that Buda, unlike Mandeville, had not been seen by Gregg during the events preceding Gregg's murder, and so Buda might not be shown to have had the same motive to kill Gregg as did Mandeville, who had played out the broken-down-auto deception to lure Gregg from his home to permit the perpetration of the burglary by the others.  He had discussed this with Buda, as well as the possibility of convictions for felony murder, second degree murder and abuse of a corpse.  He acknowledged that it evolved that Buda's guilty pleas to the burglaries committed before the Gregg burglary worked to Buda's disadvantage in the sense that these convictions then became aggravating factors for purposes of Buda's potential exposure to the death penalty.

Wander had determined that, if the charges against Buda were to go to trial, he would interview Wilson as close to the

19

trial as possible in an effort to know as well as possible what
Wilson would be likely to say at trial, since Wilson was known
to Wander to provide differing accounts, from time to time, of
what had occurred.  Wander stated that as the court appointed
counsel of Buda he did not have an investigator.  He stated
that two attorneys are not customarily appointed in Wayne
County, even for a death penalty case.  He was to be Buda's
only attorney.  He had not arranged for any expert witnesses.
His plan for showing mitigating factors in a death penalty
phase was to use Wilson as a witness to show duress and to
present testimony from Buda's mother.

Addressing plea discussions with the district attorney,
Wander stated that the district attorney initially insisted
that he would pursue the case as a death penalty case.  Buda
did not want either a death penalty or a life sentence.
Wander, based upon his experience with Wayne County juries and
the evidence, advised Buda that the prospects for a death
sentence were considerable.  Buda authorized Wander to
communicate to the district attorney an offer on Buda's part to
plead guilty to second degree murder.  This was communicated
and rejected.  Wilson had responded to a letter to him from
Wander, and it appeared to Wander that Wilson was not going to

be helpful.   Wander counseled Buda that the felony murder
charge if a conviction ensued would be subject to a life
sentence, the same as a first degree conviction (assuming no
death penalty), and that "I thought that he was really rolling
the dice going in front of an extremely conservative jury when
the facts and circumstances were that somebody was hog tied,
duct taped and shot."   (Doc. 56, p. 80).

Buda accepted the advice given by his attorney and
pleaded guilty to first degree murder with no death penalty and
was sentenced to life in prison.

Some additional factors that came to play a part in
counsel's conceptualization of Buda's case and the development
of a strategy were developed in the examination of Wander by
the District Attorney of Wayne County during the hearing of May
24, 2006.   (Doc. 56, pp. 88-114).   There was redirect
examination.   *Id*. at pp. 114-125.   The testimony concerns
events, evidence and factors that counsel intelligently
considered and weighed in advising the client and in planning
and pursuing a trial or guilty plea strategy.   Further
specificity will be omitted herein, and the transcript is a
part of the record.

Edward Buda, the petitioner, testified that he was given ineffective assistance of counsel by Mr. Wander.  He wanted a trial to prove his innocence.  (Doc. 56, page 135). He had been threatened by Wilson that if he did not shoot Gregg, he would be shot.  He does not recall discussions with counsel about statements made by Wilson and Quarles at their guilty pleas.  He recalls discussions about abuse of corpse, but not any about the idea that one can not kill someone who is already dead.  He recalls discussions with counsel about the order of the shootings.  He recalls discussions about his drug use.  He recalls counsel's statements to him that he would be more likely to receive a death sentence than another sentence, and that was based upon the nature of the crime and the fact that it was committed in the course of a felony.  Counsel did not think that intoxication as a mitigating factor would be a strong mitigating factor, because Buda was a city kid from New Jersey coming to their town and doing what happened.  He is not aware of any one trying to work on his case to develop information about his mental health and psychological state.

He was scared into pleading guilty, because he feared the death penalty.

Buda acknowledged on cross-examination that he was aware that if Gregg were to have identified Mandeville and if Mandeville were arrested, then Mandeville would become a potential informant and witness against Buda as a co-participant in the conspiracy to burglarize Gregg's home. (Doc. 56, p. 159).  He acknowledged that he did not have a basis to know whether Gregg was or was not dead when he fired a shot into Gregg's body.  *Id*, p. 162.

On redirect examination, Buda acknowledged a plan of which he was a part to falsely blame one other participant in the crime for all of the shots fired and testified that as it developed he had not followed that plan.

The petitioner's post hearing brief argues that Buda's attorney, Jeffrey Wander, who testified at the May 24, 2006 evidentiary hearing, overstated to Buda the likelihood that Buda would be adjudicated by the jury to be subject to the penalty of execution if Buda were to go to trial and that Mr. Wander abandoned or understated possible defenses.  The petition refers in part to the fact that at co-defendant Michael Wilson's guilty plea Wilson stated that he had control over co-defendant Mandeville and Buda and that he manipulated

these other two participants in the Gregg

burglary/robbery/murder.  Wilson had stated to the Court in

pleading guilty that he (Wilson) had taken the first shot at

Gregg, that Mandeville had shot second and that he (Mandeville)

> "... was scared, he was pale, and I know
> there may be a doubt in his mind whether
> to do it, and I had another .357, plus I
> had my own gun I had brought with me and
> pointed it at him and let him know he had
> to do it or he wasn't going home, and
> Buda had the same thing.
>
> As close as I was to these boys, I
> made sure they did what had to be
> done ..."

Buda Exh. 12, pp. 16-17.  Petitioner Buda believes that

Wilson's revelation could have been used by Mr. Wander as the

foundation for a defense that Buda acted under duress and not

voluntarily when he fired a shot into Gregg's body.


       The petitioner argues ineffectiveness of counsel also

based upon Mr. Wander's dismissal of the drug use of Buda,

Wilson and Mandeville.  Buda had become involved in burglaries,

according to some evidence, to steal property so as to obtain

money to buy drugs.

The petitioner also argues ineffectiveness on the part
of Mr. Wander in the fact that Mr. Wander did not discuss
lesser included offenses with Buda, acknowledging the testimony
of Wander that he did discuss attempted criminal homicide,
felony murder and abuse of a corpse with Buda.  The petitioner
acknowledges that Mr. Wander did by way of a pretrial habeas
corpus motion attack the validity of a first degree murder
charge.  The petitioner asserts the Wander did not advise him
of the possibility of making a trial issue for the jury to
decide of the question whether Gregg was dead before the
petitioner's act of firing the shot that he fired into Gregg's
body.

The petitioner also argues ineffectiveness of counsel
based upon advice given to Buda as to the potential for the
jury to return a death penalty verdict.  On January 28, 1998,
Wander wrote a letter to Buda strongly suggesting to Buda that
he take the life imprisonment route rather than face the
prospect of the death penalty.  Wander urged Buda to consider
the feelings of his mother, grandmother and others who would
suffer mental duress if Buda were executed.  The petitioner
argues that Wander placed too much emphasis in advising Buda
upon the fact that in Wander's judgment the death penalty was a

25

likely disposition in this case with a Wayne County jury.  The petitioner asserts that the potential evidence of coercion on the part of Wilson upon Buda to shoot might have negated first degree murder or if not would have been a mitigating death penalty factor and that the fact that two co-defendants had not been sentenced to death suggested a lack of a serious death penalty concern.

The petitioner asserts that Wander's investigation both at the guilty and at the penalty phase in Buda's case were rudimentary, and that Wander did not conduct a reasonable investigation.

The petitioner asserts and argues that but for Wander's advice he would not have pleaded guilty.  The petitioner argues that the application of the reasonable probability of a different outcome standard is correctly applied in his case with reference to the issue whether if he had been advised differently by Wander he would have gone to trial instead of pleading guilty rather than with reference to the issue whether there would have been a conviction of lesser offenses, would have been a lesser sentence or would have been an acquittal.

The respondents argue that the petitioner introduced no
evidence that any advice given to him by Wander was bad or
incorrect within the context of this prosecution.  The
respondents also argue that the alleged inadequacy stressed by
the petitioner, that Wander did not adequately investigate
defenses and mitigating circumstances, is a claim not raised
and framed in this habeas corpus proceeding and that the claim
is in any event not meritorious.

Counsel's performance did not fall below an objective
standard of reasonableness.  Counsel considered and assessed
the case and provided appropriate counseling and
representation.  We do not see there to have been any
reasonable prospect for a less punitive result to have occurred
for Buda, or a prospect for him to have avoided conviction of
the offenses of which he was convicted.  We do not see Wander's
performance as the petitioner's attorney to have been
deficient.  We accept the validity of the respondent's
contentions that Wander was not ineffective in believing that
an intoxication defense would not have impressed the jury, that
an effort to persuade the jury that Buda had fired the last
(third) shot into Gregg and that Gregg was dead by then would
not have prevailed factually or legally, that Wander's

evaluation of the attitudes and probable verdict of a Wayne
County jury in this case and his expression of his observations
to Buda were not deficient, and that it does not establish
inadequacy or ineffectiveness to note that an investigation or
a mitigation specialist was not put to work on the defendant's
behalf when there is not a showing of material probative and
potentially beneficial inferences that the defendant could have
obtained from such agents.

The respondents also argue that there is not a showing
of prejudice, even assuming inadequacy of representation.  They
argue that an absence of prejudice here is the reasonable
conclusion because defenses of duress and intoxication and the
factual argument that Gregg was already dead and the contention
that this fact was material were not likely to have prevailed
at trial.  Buda testified at the May 24, 2006 hearing that he
actively participated in the burglary and robbery and in the
subduing of Gregg and that he shot Gregg without making any
effort prior to shooting him to ascertain his physical
condition.

In conducting a Section 2254 habeas corpus analysis, a
federal court must afford state courts' factual findings a

presumption of correctness, which the petitioner can overcome only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both state trial and appellate courts. *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001).  This presumption also applies to implicit factual determinations. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

The PCRA court found that the petitioner's assertions that he was drunk at the time of the murder; that he was under the influence of drugs at the time of the murder and at the time of the guilty plea, and that he shot the victim only because he was threatened by a co-defendant were meritless given that they conflicted with petitioner's prior assertions. Implicit in the conclusion the these assertions are meritless is a finding that petitioner's counsel did not provide bad advice by advising him to plead guilty to first degree murder. The PCRA court's decision on that claim did not result in a decision that was contrary to or that involved an unreasonable application of, clearly established Federal law.  It did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the petitioner is

not entitled to a writ of habeas corpus on his claim that he received bad advice from trial counsel about possible defenses.

The factual basis of the second and third components of the petitioner's claim was not developed in state court.  The May 24, 2006 hearing allotted the petitioner the opportunity to develop the factual basis for those claims.

Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied and that the case file be closed.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  August 25, 2006.